[Civ. No. 15852.   First Dist., Div. Two.   Sept. 15, 1954.]

MARION VECKI et al., Appellants, v. PETER SORENSEN, Respondent.

Julian D. Brewer for Appellants.

Norman S. Menifee, Millington, Dell'Ergo & Morrissey and Wayne R. Millington for Respondent.

KAUFMAN, J.—This is an appeal from a judgment of the Superior Court of San Mateo County on a cross-complaint for reformation of a deed. Plaintiffs Marion Vecki and Vera Vecki, his wife, brought an action for damages resulting from subsidence due to removal of lateral and subjacent support as a result of quarrying operations carried on by respondent, Peter Sorensen, and for injunctive relief. Respondent Soren-

sen filed a cross-complaint seeking reformation of the deed alleged to have been signed by him by mistake and which included the land which was allegedly damaged by quarrying operations carried on by said respondent.

Appellants and respondent owned adjoining properties in San Mateo County. Appellant Marion Vecki, an attorney, and his wife Vera, occupied their land as a home-place and kept thereon horses for riding purposes. Respondent Peter Sorensen used his land as a quarry from which rock and other materials were taken for commercial purposes. The two properties abut on a steep hill broken by gullies.

On April 30, 1946, following certain negotiations, appellants purchased a tract of land from respondent Sorensen which adjoined their land for the purpose of pasturage for appellants' horses. The deed was prepared by Marion Vecki and mailed to Sorensen. Shortly thereafter, on April 30, 1946, Vecki came to Sorensen's office with a check for $400, the price previously agreed to, and Sorensen signed the deed. The deed, designated "Joint Tenancy Deed," states that "Peter Sorensen and Rigmor Sorensen, his wife, the first parties, hereby grant to Marion Vecki and Vera Vecki, his wife, the second parties, in joint tenancy all that real property situated in the County of San Mateo, State of California, and bounded and described as follows:

"Beginning at the most northerly corner of that certain 10.66 acre tract conveyed to Peter Sorensen by deed recorded January 11, 1944, in Volume 1103 of Official Records, page 81, in the office of the Recorder of San Mateo County; thence along the northeasterly boundary of said 10.66 acres tract southerly 48° 58' east 325 feet; thence southerly 41° 02' west 200 feet; thence northerly 48° 58' west 325 feet, more or less, to the northwesterly boundary of said 10.66 acre tract; thence along said last named boundary northerly 41° 10' east 200 feet to the point of beginning."

After Sorensen signed the deed he took it to his house which was next door to his office, where his wife Rigmor signed it. Vecki remained in the office. Mrs. Sorensen had the deed in her possession about two minutes. Sorensen testified that the whole transaction, including the time it took for both himself and his wife to sign the deed took about 10 minutes. Sorensen said that at this meeting the only conversation concerning the amount of land Vecki was to acquire was that he was to buy an acre for $400. He said he didn't pay much attention to the

description on the deed at that time, because he took Vecki's word that it was for an acre of ground, and because he knew Vecki to be an attorney, he signed the deed and had his wife sign it. In his business, respondent said he was in the habit of signing papers before attorneys, and even contractors without reading them—that their word was good, although he admitted that appellant had never been his attorney.

Respondent Sorensen testified that in their first conversation, about three months before the deal was made, Vecki indicated to him that he would like to buy an acre of ground up on the top of the hill in a certain corner of respondent's land which respondent at the trial indicated on the map. No agreement was made then as respondent told Vecki he wanted $3,500 or $4,000 for an acre. After Mr. Skanderup, a mutual friend talked about the matter to Sorensen, Vecki and he had a further conversation about selling Vecki an acre of ground in that corner for $400. Again Sorensen testified that when they were discussing the property he did not point out any oak trees or anything of that sort, that the agreement he had as to what acre was to be sold he pointed out on the map, "an acre square, more or less square," that Vecki's horse barn was nearby, and that was what he wanted.

Respondent admitted that he knew appellants had extended their horse fence around more than an acre of ground but that he didn't care about that, as he had told Vecki that he could use all the ground he wanted to for his horses. Sorensen testified that he knew an acre to be approximately 200 feet by 208 feet, that there wasn't a discussion of a physical piece of property, but just an acre from that corner.

Skanderup testified that Vecki told him that Sorensen had a piece of flat land, an acre below his place which he would like to buy, and which he would pay $400 for. Skanderup agreed to talk to Sorensen about it. He stated that an acre was specifically mentioned, and that he told Sorensen that Vecki wanted to buy an acre.

Vecki testified that he told Skanderup that the piece he wanted to buy was a little over an acre, that he never said that he was interested in one acre. When he again talked to Sorensen he told him that he was not interested in the ravine which cut into the flat piece of land, but Sorensen said, "no," that he wanted a straight line, that he didn't want any angles. Appellant said he had a steel tape with which he measured, and that he told Sorensen it would be a piece about 200 by 325 feet and that he agreed to sell that for $400.

After that appellant went to the title company and obtained a description, the deed was drawn, and he transmitted it to Sorensen by letter. Vecki stated that they never discussed his buying one acre, that he was buying a piece, that he was not interested in the ravine, and if that were taken out of the 200 feet by 325 feet piece, the remainder wouldn't be over an acre.

The review of the above testimony shows that the testimony was clearly conflicting as to whether the agreement was for an acre of ground in a certain corner of respondent's property, or for a certain piece which exceeded an acre in length by more than 100 feet.

Appellants contend that the cross-complaint is fatally defective in that it does not allege the facts stating a cause of action, in that no facts are alleged which show the existence of any mistake or knowledge of a mistake on the part of cross-defendants.

The cross-complaint alleges that defendant and cross-complainant was the owner in fee of a tract of land consisting of 10.66 acres; that on or about April 30, 1946, he orally agreed to sell and cross-defendants agreed to purchase one acre, being the most northeasterly portion of the lands of said defendant and cross-complainant at the purchase price of $400. The legal description of the land actually conveyed by the deed is then set forth, a tract of 200 feet by 325 feet, and it is further alleged that defendant and cross-complainant did not discover the mistake in delineating the boundaries of the one acre tract conveyed to plaintiffs and cross-defendants until January 1951; that said deed actually conveyed a piece of property considerably in excess of one acre, and that immediately upon discovery of said mistake defendant and cross-complainant herein notified plaintiffs and cross-defendants demanding that it be corrected, but that plaintiffs and cross-defendants refused to reconvey to cross-complainants the land in excess of one acre erroneously and by mistake conveyed to them; that defendant cross-complainant is ready and willing to execute a deed to cross-defendants for one acre and to rectify the mistake in the description of said land and asks reformation of the deed to conform to the intention of the parties.

The trial court found all the allegations of the cross-complaint to be true, and also found that it was true that the property actually described in the deed consisted of land in excess of one acre, being approximately one and one-half

acres, and that it was true that said deed "was a mistake of defendant and cross-complainant herein, which mistake was at the time known to plaintiffs and cross-defendants herein," and that the property actually conveyed should have been described as "Beginning at the most northerly corner of that certain 10.66-acre tract conveyed to Peter Sorensen by deed recorded January 11, 1944 . . .; thence along the northeasterly boundary of said 10.66 acre tract southerly 48° 58′ east 217.8 feet; thence southerly 41° 02′ west 200 feet; thence northerly 48° 58′ west 217.8 feet, more or less, to the northwesterly boundary of said 10.66 acre tract; thence along said last named boundary northerly 41° 10′ east 200 feet to the point of beginning."

It is appellants' contention that the pleadings are fatally defective under the rules laid down in *Auerbach* v. *Healy*, 174 Cal. 60 [161 P. 1157], for pleading a cause of action asking reformation for mistake or fraud based on § 3399, Civil Code.* The rule stated in that case is that the complaint should allege what the real agreement was, what the agreement as reduced to writing was, and where the writing fails to embody the real agreement. Further, if the complaint seeks the correction of a description of land the pleading must describe the premises so as to render certain the location of the boundaries. It is also stated that it is necessary to aver facts showing how the mistake was made, whose mistake it was, and what brought it about, so the mutuality may appear, and if it is a case where there was a mistake of one party which the other party at the time knew or suspected, the facts showing such mistake must be alleged. The opinion in that case then notes that the complaint and the findings are fatally defective in many particulars, one of which is that it was not alleged that Auerbach or his wife, or both, claim any right, title or interest, legal or equitable, in the lot in question. The court stated that no one can maintain an action to reform a deed unless he has some title or interest to be subserved by the reformation. It is also noted that it does not appear the mistake would have been material had it been properly alleged. The court goes on to state that the making of the mistake is not properly alleged,

*Section 3399, Civil Code: "When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised, on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value."

but that in the absence of a demurrer for uncertainty might be held sufficient, but in view of the other defects noted, it was said that the pleading could not be approved nor could it be held to state a cause of action. The execution of the deed was denied, and the court failed to find in regard to that issue. The judgment granting reformation was reversed because it was not sustained by the pleading or the findings.

In the present case an oral agreement as to one acre in a certain location was alleged, that by mistake, land greatly in excess of one acre was conveyed. It was alleged that cross-complainant was the owner in fee of the parcel of land out of which he agreed to sell the one acre. Thus, although no details are given, a mistake in description is alleged, the materiality of the mistake can be inferred from the excess land conveyed by the description in the deed which is quoted in the complaint. It is true that it does not appear from the complaint whether the mistake was mutual, or the mistake of one party known to the other. No doubt the demurrer for uncertainty should have been sustained, but unless prejudice resulted from such error, it is not sufficient to demand a reversal of the judgment. (*Salas* v. *Whittington,* 77 Cal.App. 2d 90, 93 [174 P.2d 886]; *Miller* v. *Lantz,* 9 Cal.2d 544, 547 [71 P.2d 585].)

Appellants cite several cases in which the rule in *Auerbach* v. *Healy, supra,* has been upheld. Those cases can all be distinguished from the instant case, however. In *Weaver* v. *Ratcliffe,* 116 Cal.App. 513 [3 P.2d 20], the only ground for reversal was that the findings were insufficient to sustain the judgment in that there was a failure to find upon the issue of mutual mistake. The court in that opinion does not quote or review the pleadings, but simply states that the pleadings do not state a cause of action for reformation because of mistake, and even assuming that a good cause of action was pleaded, there was no error because there was no evidence in the record to support such allegations. In *Johnson* v. *Sun Realty Co.,* 138 Cal.App. 296 [32 P.2d 393], a judgment sustaining a demurrer without leave to amend was reversed. The opinion states that while it is necessary to state both the actual and executed agreements, "a general statement, if comprehensive and complete, is sufficient although the proof may involve details." In *Coneland Water Co.* v. *Nickalls,* 75 Cal. App. 212 [242 P. 518], cross-complainant did not allege that anything was embodied in or omitted from the contract

through mistake, or that any term was intended to mean anything different from the plain meaning of the terms used, but showed only an oral agreement which was not embodied or intended to be inserted in the written contract executed by the parties. In *Horton* v *Winbigler,* 175 Cal. 149 [165 P. 423], it was contended that no cause of action was alleged in that an agreement of the parties was not sufficiently alleged. Although conceding that an agreement was not directly alleged, the court held the complaint to be sufficient, since it could be reasonably determined from the language used that such an agreement was alleged. In *Eaves* v. *Timm Aircraft Corp.,* 107 Cal.App.2d 367, 371 [237 P.2d 287], the third count of the fifth amended complaint showed by the facts stated that it could not be amended to state a cause of action for reformation. The case of *Bailard* v. *Marden,* 36 Cal.2d 703 [227 P.2d 10], was one wherein reformation could not be granted because it was not shown that a definite intention or agreement on which the minds of the parties had met, preexisted the instrument, that it must be shown that both parties had the same understanding, and that the court here attempted to create a contract which the evidence did not show had been agreed to by both parties.

We believe it is apparent from the evidence reviewed in the present case that there was a clear conflict as to what the agreement was. The trial judge believed respondent Sorensen's version of the agreement of the parties. Appellants argue, however, that the basic rule is as stated in 23 Ruling Case Law, page 68, that a high degree of proof is necessary to establish a right to reformation, and an instrument should not be reformed on loose, contradictory or unsatisfactory evidence, and that it has been held that a direct conflict as to the mistake alleged is conclusive against reformation, and that it has been doubted whether a writing should be reformed on the unsupported testimony of the party asking its reformation. However, in this state, it is the rule that the proof should be clear, convincing and satisfactory to the court—and that means the trial court—but a mere conflict of testimony as to the mistake does not require a denial of relief, and the decision of the trial court upon such conflict of evidence is conclusive upon the appellate court. (*Home & Farm Co.* v. *Freitas,* 153 Cal. 680, 684 [96 P. 308] ; *Hutchinson* v. *Ainsworth,* 73 Cal. 452 [12 P. 82, 2 Am.St.Rep. 823] ; *Wilson* v. *Moriarity,* 88 Cal. 207 [26 P. 85].)

*McClure* v. *Cerati,* 86 Cal.App.2d 74 [194 P.2d 46], is a

case in which a general and special demurrer were sustained with leave to amend. Plaintiff elected to stand on his pleading and failed to amend. Hence judgment of dismissal was entered. There was no trial on the merits as here, where appellants proceeded to trial, and made no objection whatsoever to the introduction of evidence and the trial was had on the theory of mistake, testimony was offered as to appellants' version of what the agreement was, and in contradiction of respondent's testimony. *Petersen* v. *Dynes*, 103 Cal.App.2d 5 [228 P.2d 616], was a case in which the trial court's decision denying reformation was upheld as being sufficiently supported by the evidence.

█ It is also true, as noted by respondent, that when parties proceed to trial without objection as if a certain issue were in the case, they cannot on appeal maintain that such issue was not in the case. (2 Cal.Jur. 1031, § 613.)

Appellants contend that the finding that there was a mistake of defendant and cross-complainant which was known to cross-defendants herein is a finding outside the issues and unsupported by the evidence. Evidence was introduced without objection on this issue at the trial. If the trial court believed respondent's testimony that an agreement was made for the one acre only, it could infer that appellant having drawn the deed, knew it was not for one acre; and again, if the court believed respondent's testimony that appellant in presenting the deed said it was for an acre, it could logically be inferred that appellant knew respondent was signing the deed in that mistaken belief. █ Only if respondent's testimony is inherently improbable can an appellate court overturn the trial court's finding on conflicting evidence. (*Petersen* v. *Dynes*, 103 Cal.App.2d 5, 11 [228 P.2d 616].)

Appellants cite *Chetwood* v. *California Nat. Bank*, 113 Cal. 414 [45 P. 704], to the effect that a variance is fatal to the judgment where the relief decreed is not the relief sought. Here, however, the relief sought—reformation—was the relief decreed.

Appellants' final contention is that it was reversible error not to have brought in Rigmor Sorensen, respondent's wife, as a necessary party. The deed introduced by cross-complainant was the deed of Peter Sorensen and Rigmor Sorensen, and was signed by both. Appellants say that these facts raise the presumption that Rigmor Sorensen was a necessary party, and the failure to produce her gives rise to the inference that her testimony would have been adverse. Respondent answers that

in his cross-complaint he set forth that he was the owner in fee of the property on April 30, 1946—the date when the deed was executed. This allegation was not denied by appellants, was found to be true by the trial court, and is an admitted fact under the pleadings. ▮ It is true, as argued by appellant, that if the omitted party is indispensable, the objection may be urged on appeal and failure to demur or answer for nonjoinder does not waive the objection. (*Hartman Ranch Co.* v. *Associated Oil Co.,* 10 Cal.2d 232 [73 P.2d 1163]; *Mitau* v. *Roddan,* 149 Cal. 1 [84 P. 145, 6 L.R.A.N.S. 275].) However, here the court has concluded from the pleadings and evidence that respondent Peter Sorensen was the owner of the property, even though the deed recited the names of the husband and wife as grantors. We cannot see how the wife could claim prejudice even if she had a community interest in the property, as one-half acre is being restored to the grantors. ▮ It is clear that the record shows that the wife is not an indispensable party to the action where, as between the parties to the action, it is admitted that the cross-complainant was the owner in fee of the property at the time the deed was executed. ▮ Certainly the appellants are not in a position to complain in view of their admission, and the wife's rights are not adversely affected or prejudiced in any way. (*First Nat. Bank* v. *Superior Court,* 19 Cal.2d 409 [121 P.2d 729].)

▮ In the reply brief, appellants reiterate their argument that the full area described in the deed is intended to be included by the use of the term ''more or less,'' which is used after the words concluding the description of the boundaries ''west 325 feet, more or less.'' It has been held, however, that the use of the words ''more or less'' annexed to the statement of quantity is no obstacle to relief in equity by way of reformation. (See 45 Am.Jur. p. 606, § 39; 9 Cal.Jur. p. 302, § 166; *Home & Farm Co.* v. *Freitas,* 153 Cal. 680, 685 [96 P. 308].)

We conclude that the findings and judgment of the court below are supported by ample evidence and that no prejudicial error appears in the record.

Judgment affirmed.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied October 15, 1954, and appellants' petition for a hearing by the Supreme Court was denied November 10, 1954.